**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Adrian CHAVEZ, Defendant–Appellant.**

No. 08CA2144.

Colorado Court of Appeals, Div. I.

July 21, 2011.

As Modified on Denial of Rehearing Aug. 11, 2011.*

* Taubman, J., would grant.

John W. Suthers, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

Defendant, Adrian Chavez, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault—aided and abetted, sexual assault on a child—force, sexual assault on a child, enticement of a child, and enticement of a child—bodily injury. He also appeals his designation as a sexually violent predator (SVP).

Because we conclude the trial court should have granted challenges for cause to two prospective jurors who expressed actual bias; defendant exercised peremptory challenges to excuse those jurors; and he exhausted all of his peremptory challenges, we further conclude that under *Morrison v. People,* 19 P.3d 668, 671 (Colo.2000), and *People v. Macrander,* 828 P.2d 234, 244 (Colo.1992), his conviction must be reversed and a new trial held on remand. As a result of this disposition, we need not address the other trial issues raised by defendant or his challenge to his SVP designation.

I.  Standard of Review and Applicable Law

We review a trial court's ruling on a juror challenge for cause for an abuse of discretion based on the entire voir dire at issue. *People v. Young,* 16 P.3d 821, 824 (Colo.2001). A

trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Montoya*, 141 P.3d 916, 919 (Colo. App.2006).

This is a "very high standard of review" that gives deference to the trial court's superior ability to assess a potential juror's credibility. *Young*, 16 P.3d at 824 (quoting *Carrillo v. People*, 974 P.2d 478, 485–86 (Colo.1999)). "The placing of this discretion in the trial judge does not, however-er, permit appellate courts to abdicate their responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People*, 624 P.2d 1331, 1332 (Colo.1981); *see also People v. Hancock*, 220 P.3d 1015, 1016 (Colo.App.2009).

Constitutional principles of due process guarantee a criminal defendant the right to a fair trial. *Morrison*, 19 P.3d at 672. An impartial jury is fundamental to that right, and "[a] defendant's right to an impartial jury is violated if the trial court fails to remove a juror biased against the defendant." *Id.; see also Nailor v. People*, 200 Colo. 30, 31, 612 P.2d 79, 79 (1980). A defendant's right to challenge prospective jurors for cause is integral to his or her right to a fair trial. *Carrillo*, 974 P.2d at 486; *Macrander*, 828 P.2d at 238.

Section 16–10–103(1)(j), C.R.S.2010, codifies these precepts and states that a trial court must excuse a prospective juror for cause where "[t]he existence of a state of mind in the juror evinc[es] enmity or bias toward the defendant or the state." However, the statute further provides:

> [N]o person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

*Id.*

Where a prospective juror is challenged on grounds of actual bias, the trial court must consider whether the juror will render an impartial verdict based on the law and the evidence. *Young*, 16 P.3d at 824. The trial court must grant the challenge if the prospective juror is unwilling or unable to render an impartial verdict based upon the court's instructions and the evidence admitted at trial. *Morrison*, 19 P.3d at 672.

Several rules guide a trial court's analysis in this regard. For example, a trial court may give considerable weight to a prospective juror's statement that he or she can fairly and impartially decide the case. *People v. Sandoval*, 733 P.2d 319, 321 (Colo. 1987); *People v. Simon*, 100 P.3d 487, 492 (Colo.App.2004). Further, a challenge should not be sustained if the subsequent examination of the prospective juror reveals that the alleged bias "was the product of mistake, confusion, or some other factor unrelated to the juror's ability to render a fair and impartial verdict." *People v. Blessett*, 155 P.3d 388, 392 (Colo.App.2006); *see also People v. Russo*, 713 P.2d 356, 362 (Colo. 1986). A trial court should resolve any doubts as to a prospective juror's impartiality by excusing the juror. *Morrison*, 19 P.3d at 672.

Reversal is required if a trial court erroneously denies a challenge for cause and the defendant exhausts his or her peremptory challenges. *Id.* at 671; *Macrander*, 828 P.2d at 244.

## II. Voir Dire

Defendant contends the trial court erred in denying his challenges for cause to Jurors P., M., and R. We agree as to Jurors P. and R., and because reversal of defendant's conviction is therefore required, we need not decide whether the challenge for cause to Juror M. should have been sustained.

When viewed in context of the entire voir dire, the statements of Jurors P. and R. indicate that it was an abuse of discretion for the trial court to deny defendant's challenges for cause to them. In the early part of voir dire, these prospective jurors made fairly innocuous statements. However, toward the close of voir dire, defense counsel raised a significant issue that revealed these prospective jurors harbored a significant bias. The trial court declined to extend voir dire to

conduct potentially rehabilitative questioning. Under the circumstances presented here, the trial court erred in not dismissing these jurors for cause.

Defense counsel questioned jurors early in voir dire about the prosecution's burden of proof. Near the close of voir dire, defense counsel informed the prospective jurors for the first time that evidence would be presented at trial showing that defendant had shot someone other than the alleged sexual assault victim. Defense counsel carefully questioned each prospective juror about the impact this evidence might have on him or her. The course of voir dire showed how the views of Jurors P. and R. stood in stark contrast to those of all the other jurors, except for Juror M., who was not excused for cause, and two others who were excused for cause.

Defense counsel first asked a prospective juror, "Do you think you can separate [evidence of the shooting] in your mind, even if you think [defendant] acted inappropriately? Can you still make the prosecution meet their [sic] burden with regard to the accusations?" The juror said that she could, and counsel posed the same question to three additional prospective jurors, all of whom said they could mentally separate the shooting from the sexual assault for which defendant was on trial.

Juror B. (who was later excused for cause) was the first to disagree, stating:

It would give me [a] propensity to believe there was—there was other behavior. I would try to focus on the task at hand, but just associating it with other deviant acts, I would have a hard time differentiating it.

Juror B. reiterated that the shooting would cloud her judgment and ease the prosecution's burden.

Defense counsel said to the next prospective juror, "The prosecution has the burden with regard to the accusations of the sexual assault. Do you understand that?" The juror said that he did and agreed to hold the prosecution to that burden. Defense counsel then asked five more prospective jurors for their thoughts on the matter, and all five indicated that the shooting would not influence their decision. Counsel told one of these jurors, "The judge is going to tell you [the shooting] can only be used for a limited purpose."

When defense counsel questioned Juror H. (who was later excused for cause), he indicated that, in his mind, the shooting would shift the burden to defendant:

JUROR H.: Honestly I believe that someone that's a criminal is more likely to commit a crime. So I mean, I think that would put him at a lower level to start out with, shifted a lot more burden on your side.

DEFENSE COUNSEL: Okay. [The prosecution is] starting up a little higher than we are; is that what you are saying?

JUROR H.: That is what I'm saying because I do feel that someone that's already a proven criminal is more likely to be a criminal than somebody who is not.

Defense counsel reminded Juror H., "I told someone earlier the judge is going to tell you [that] you are not supposed to do that." The juror responded, "I can certainly try my best," but added, "My opinion is my opinion."

The next three prospective jurors indicated that they would be able to separate the two acts and hold the prosecution to its burden to prove the sexual assault.

At this point, the end of the trial day was approaching, and the trial court told defense counsel that she needed to "finish up." She then asked Juror P. whether the shooting would give the prosecution a "leg up." He replied:

JUROR P.: To answer quite honestly, I feel lack of judgment shown in the shooting would color my opinion. I'd have a hard time getting past it. I'd have to hear evidence, of course, but the lack of judgment is a big thing.... I feel I probably would just tie those together.

DEFENSE COUNSEL: Same question to you I've been asking everyone.

JUROR P.: [Defendant] only had [a] couple points to start with, yeah, to be honest.

DEFENSE COUNSEL: [It would] give [the prosecution] a little advantage, improving the allegations in this case, in your mind?

JUROR P.: Yeah ... I'm really anti-violent, just the ability to pull a trigger to shoot someone, that shows a lot of character. To me it's a big thing.

DEFENSE COUNSEL: So more likely you would think that he is then guilty of sex assault?

JUROR P.: Hard to say without hearing the evidence. Definitely, I would be coloring in that direction.

DEFENSE COUNSEL: Starting off, starting from the beginning?

JUROR P.: I feel that way.

After this exchange, one more prospective juror stated he could hold the prosecution to its burden. The court then asked, "Anyone [we] haven't spoken to ... that feel you would not be able to—?" Juror M. raised his hand, and then said:

I definitely feel ... it could come down to he said—she said. And I agree with the gentleman over here, violent shooting, shooting is a violent act and therefore it would dictate a character trait or behavior or pattern that you know I would essentially be kind of somebody else [sic] a tipping point if it was at that level.

Juror R. also raised his hand and said, "I think you're telling a story here [and] you're leaving one chapter out. To me it's all—that's the book of who the person is." Defense counsel asked him if "[the prosecution's] burden gets a little bit less because of the shooting," and Juror R. said, "Yes."

A short time later, voir dire ended. Importantly, there was no additional questioning of Jurors P., M., or R. by either the court or counsel.

Defense counsel challenged Jurors B., H., P., M., and R., as well as one other prospective juror. The prosecutor agreed with the challenge to Juror H., but added that further inquiry was necessary as to the other challenged jurors:

I think what needs to happen is that the jury needs to hear from the Court and they need to hear how they will be instructed as [sic] to handle that evidence. And then they need to be asked if they can follow that instruction or not.... [F]urther inquiry needs to be made.

The trial court declined to engage in further inquiry. The court granted the challenge for cause to Juror H. based on counsel's agreement that he should be excused. It also excused Juror B., noting that she had used the word "propensity" and had refused to reconsider her opinion that the shooting would color her opinion. However, the court overruled the challenges to the other prospective jurors, and defense counsel objected:

I would like to state for the record that at the point where I was questioning [Juror R.] and [Juror M.], I had moved away from individual questioning ... in light of the fact that the Court had alerted me to my time running out. Specifically, ... [Juror R.] said [the shooting] is who [defendant] is as a person, and indicating that he would use that as character evidence, that the burden gets less because of the shooting.

[Juror M.] indicated [that] ... he agreed with the people ... who had been seated prior to him with regard to the fact that [the shooting] presents a character trait for violence and that [it] would factor into his estimation of the prosecution's case.

The court overruled counsel's objection, noting that Juror R. had indicated "he would have to listen to the evidence," and Juror M. "had been very clear throughout the day that he would follow the law." The court concluded, "There is going to be a limiting instruction so that's why I'm overruling those objections."

The defense exercised peremptory challenges to remove Jurors P., M., and R., and exhausted all of its peremptory challenges.

### III. Analysis

■■■ The trial court's denial of the challenges for cause to Jurors P. and R. was an abuse of discretion and requires reversal of the conviction.

We are unable to conclude that the voir dire as a whole supports the trial court's ruling as to Jurors P. and R. Those jurors each made statements demonstrating actual bias against defendant. As noted above, Juror P. stated that the shooting would color his opinion and ease the prosecution's bur-

den, and that defendant "only had [a] couple points to start with." Juror R., when asked if the prosecution's burden "gets a little bit less because of the shooting," said, "Yes." These statements were unequivocal, occurred at the close of a lengthy voir dire, and were not mitigated by any rehabilitative questioning and responses.

By the time the prospective jurors made these statements, the trial court had explained the prosecution's burden of proof, and had twice reminded the venire that defendant was presumed innocent. The court had told the jurors not to decide the case based on "sympathy or prejudice," but "solely on the evidence admitted by the Court and law as set forth in [its] instructions." Defense counsel had said repeatedly that the burden of proof rested on the prosecution. She had explained clearly that the jurors would be required to follow the court's instruction not to use evidence of the shooting to prove the sexual assault charges.

The contrast was stark between the strong statements of other prospective jurors that they would be able to follow these requirements and the equally strong statements of Jurors P. and R. indicating that they would not be able to do so. These two jurors must have been aware that their views diverged significantly from those of nearly all the other jurors who spoke before they did, and yet they persisted in their pronouncements of bias, thus demonstrating "an unwillingness to accept and apply those principles that form the bedrock of a fair trial." *People v. Gurule,* 628 P.2d 99, 103 (Colo.1981).

These circumstances are analogous to those that have been held to require a prospective juror's dismissal for cause. *See, e.g., Gurule,* 628 P.2d at 103 (juror's statement, that the defense would have "to do a lot of proving" to overcome the opinion she had formed, nullified the presumption of innocence and required dismissal for cause); *Hancock,* 220 P.3d at 1019 (absent rehabilitative questioning or counterbalancing information, juror's statements manifesting an inability to apply the presumption of innocence and burden of proof required dismissal for cause); *People v. Merrow,* 181 P.3d 319, 321 (Colo.App.2007) (absent rehabilitative questioning or counterbalancing information, juror's statements that she could not find a drug user to be credible required dismissal for cause); *People v. Wilson,* 114 P.3d 19, 23 (Colo.App.2004) (absent statement indicating juror could be fair and impartial or presume the defendant innocent, juror's statement that defendant "had a strike against him" required dismissal for cause); *People v. Luman,* 994 P.2d 432, 435–36 (Colo.App.1999) (dismissal for cause required where juror was biased, and juror did not expressly or impliedly state that she could put that bias aside).

While the dissent concludes that other statements made by Jurors P. and R. during voir dire counterbalanced their statements of bias and support the trial court's ruling, we cannot agree.

The dissent notes that Juror P. stated, "I would expect a lot more than just hearsay.... I agree just because you're present doesn't mean you're guilty of anything." This statement was made in response to a question concerning what type of evidence Juror P. expected to see during the trial, and well before defense counsel revealed the fact of the shooting. In no way does this statement mitigate the significant bias shown by Juror P. It does not indicate that he would refrain from using evidence of the shooting to infer defendant's guilt of the sexual assault, and would properly hold the prosecution to its burden to prove defendant committed the sexual assault despite such evidence.

Similarly, the statements of Juror R. relied on by the dissent do not mitigate the bias he demonstrated. His statement that "it could go both ways," in response to the question, "Are you open to the possibility that someone may have said they did something and that might not in fact be true ... ?" does not demonstrate that he could fairly and impartially decide the case based solely on the law and the evidence, or that he could follow an instruction not to allow the shooting to influence his decision on defendant's guilt or innocence of the sexual assault.

Considering the voir dire in its entirety, we conclude the record is devoid of indications that these two jurors could set aside their

biases and follow the court's instructions to render a fair and impartial verdict based solely on the law and the evidence. At no point during the voir dire were these jurors asked whether they could do so, and neither of them indicated as much. Ultimately, there was insufficient "counterbalancing information" to purge the bias expressed by Jurors P. and R., or to lend any meaningful support for the trial court's determination that they could render fair and impartial verdicts based on the law and the evidence.

Moreover, the trial court provided no rationale for its denial of the challenge to Juror P. With regard to Juror R., it noted the juror had said "he would have to listen to the evidence," but the record does not show that Juror R. made such a statement. We note that the statements of Jurors P. and R. were similar to those made by Jurors B. and H., who were excused for cause.

The expressions of bias by Jurors P. and R. at such a late stage of the voir dire, especially when viewed in context with the contrasting views of most other prospective jurors, demonstrated that they were either unwilling or unable to render an impartial verdict based on the law and the evidence, and they should have been excused for cause. *See Hancock,* 220 P.3d at 1019; *Morrison,* 19 P.3d at 672.

■ We recognize that the supreme court has recently granted a petition for certiorari in *People v. Novotny,* —— P.3d —— (Colo.App.2010) *(cert. granted* Jan. 31, 2011), to review its decisions in *Macrander* and later cases holding that reversal is required if a trial court erroneously denies a challenge for cause and the defendant exhausts his or her peremptory challenges. *See Morrison,* 19 P.3d at 671; *Macrander,* 828 P.2d at 244; *cf. People v. Roldan,* —— P.3d ——, —— (Colo.App.2011) (Bernard, J., specially concurring); *Merrow,* 181 P.3d at 322–23 (Webb, J., specially concurring). Because we are bound by these supreme court precedents, we conclude that reversal of defendant's conviction is required.

Given our reversal of the conviction, we need not address the remaining issues raised by defendant here.

The judgment is reversed, and the case is remanded for a new trial.

Judge MILLER concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

## I. Introduction

The majority reverses the conviction of defendant, Adrian Chavez, for sexual assault—aided and abetted, sexual assault on a child—force, sexual assault on a child, enticement of a child, and enticement of a child—bodily injury, and concludes that the trial court abused its discretion when it denied challenges for cause to two of three prospective jurors at issue. I respectfully conclude, after reviewing the whole voir dire of all three prospective jurors, that the trial court did not abuse its discretion in denying the challenges for cause.

I also address, but reject, Chavez's other contentions: (1) that the trial court abused its discretion and denied him his right to confront a witness when it sua sponte ordered him to stop repeatedly asking the witness the same question; (2) that the prosecutor committed misconduct during closing argument; and (3) that the trial court erred when it designated him a sexually violent predator (SVP). Because it reverses Chavez's convictions on the ground of the challenges for cause, the majority does not address these issues.

## II. Challenge for Cause

Chavez contends that the trial court abused its discretion when it denied challenges for cause to three prospective jurors, because they expressed bias against him regarding character evidence. I discern no abuse of discretion.

### A. Standard of Review

A trial court's ruling on a challenge for cause to a prospective juror is reviewed for an abuse of discretion. *Carrillo v. People,* 974 P.2d 478, 485 (Colo.1999) *(Carrillo II).* A reviewing court gives great deference to the trial court's handling of challenges for cause, because such decisions depend on as-

sessing the juror's credibility, demeanor, and sincerity in explaining his or her state of mind. *Morrison v. People*, 19 P.3d 668, 672 (Colo.2000). A trial court has a unique role and perspective in evaluating the demeanor and body language of witnesses. *Carrillo II*, 974 P.2d at 486. "The trial court is in a superior position to evaluate these factors than a reviewing court, which has access only to a cold record for its determination." *Morrison*, 19 P.3d at 672.

### B. Analysis

The Due Process Clauses of the United States and Colorado Constitutions guarantee a criminal defendant the right to a fair trial. An impartial jury is a fundamental element of the constitutional right to a fair trial. *Id.* (citing *People v. Rhodus*, 870 P.2d 470, 473 (Colo.1994)). A trial court violates a defendant's right to an impartial jury if it fails to remove a juror biased against the defendant. *Id.* (citing *Nailor v. People*, 200 Colo. 30, 32, 612 P.2d 79, 80 (1980)). A trial court must excuse a prospective juror for cause where "[t]he existence of a state of mind in the juror evinc[es] enmity or bias toward the defendant or the state." § 16–10–103(1)(j), C.R.S.2010.

To determine whether the trial court abused its discretion in ruling on a challenge for cause, the entire voir dire of the prospective juror must be reviewed by the appellate court. *Carrillo II*, 974 P.2d at 486. A trial court may properly consider "a prospective juror's assurance that he or she can fairly and impartially serve on the case." *People v. Drake*, 748 P.2d 1237, 1243 (Colo.1988). A court errs only when "a potential juror's statements compel the inference that he or she cannot decide crucial issues fairly" and there is no "rehabilitative questioning or other counter-balancing information." *People v. Merrow*, 181 P.3d 319, 321 (Colo.App.2007). "[T]he trial judge is the only judicial officer able to assess fully the attitudes and state of mind of a potential juror by personal observation of the significance of what linguistical-

ly may appear to be inconsistent or self-contradictory responses to difficult questions." *Carrillo II*, 974 P.2d at 487 (quoting *People v. Sandoval*, 733 P.2d 319, 321 (Colo. 1987)).

Even if a potential juror expresses some prejudice or predisposition, a disqualification for cause is not required if the trial court is reasonably satisfied that the prospective juror is willing to be fair and to follow the court's instructions. *People v. Carrillo*, 946 P.2d 544, 547 (Colo.App.1997) (*Carrillo I*), *af'd*, *Carrillo II*. Here, Chavez does not contend that Jurors M., R., and P. could not follow the court's instructions, and therefore, I limit my review to the trial court's determination that the jurors could be fair.

In denying the challenges for cause against the three prospective jurors, the trial court told the jury that it took "a very long day of jury selection," in order "to ensure that ... you would be a fair jury." During the day-long voir dire, the trial court met in chambers with some prospective jurors, and both in chambers and in open court granted some challenges for cause and denied others.

Here, all three challenges for cause are based on statements by the prospective jurors regarding the admission of CRE 404(b) evidence showing that Chavez had shot someone other than the alleged sexual assault victim. During voir dire, Juror M. stated that evidence of Chavez's involvement in a prior violent shooting "would dictate a character trait or behavior or pattern" which could tip him in favor of the prosecution. Juror R. stated that evidence of Chavez's involvement in a prior shooting could lessen the prosecution's burden of proof.[1]

Finally, Juror P. stated that "the shooting would color [my] opinion," and that he would "have a hard time getting past it."

While the challenged statements of Jurors M., R., and P. were not followed by rehabilitative questioning, I conclude the trial court properly relied on "other counter-balancing

---

1. As the majority notes, the trial court denied the challenges for cause to Jurors M. and R. because it intended to give the jurors a limiting instruction regarding Chavez's involvement in the shooting. Under such limiting instruction, the jurors would be instructed that they could consider evidence of Chavez's involvement in the shooting only for a specified limited purpose or purposes. *See* CRE 404(b).

information" in rejecting the challenges for cause. *See Merrow*, 181 P.3d at 321.

### 1. Juror M.

Chavez contends that the trial court abused its discretion when it denied his challenge for cause to Juror M., because the prospective juror stated that evidence of Chavez's involvement in a prior violent shooting "would dictate a character trait or behavior or pattern" which could tip him in favor of the prosecution. After reviewing Juror M.'s entire voir dire, I conclude the trial court did not abuse its discretion in rejecting Chavez's challenge for cause.[2]

Juror M.'s statement regarding evidence of a prior shooting is reviewed in the context of the entire voir dire. *Carrillo II*, 974 P.2d at 486. Shortly before Juror M.'s statement at issue here, defense counsel asked him, "Do you understand the burden in this case [is] for the prosecution to prove [the defendant] guilty beyond a reasonable doubt?" and Juror M. unambiguously answered, "Yes." Juror M. agreed with defense counsel that "[t]he burden lies with [the prosecution] throughout the course of this trial." Denying the challenge for cause to Juror M., the trial court stated that it believed Juror M. would follow the court's instructions.

Having reviewed the entire voir dire, I conclude the trial court did not abuse its discretion in denying the challenge for cause to Juror M., in light of the limiting instruction the trial court intended to provide the jurors about the limited purpose of the evidence of Chavez's involvement in the shooting.

### 2. Juror R.

Chavez next contends that the trial court abused its discretion in denying his challenge for cause to Juror R., because Juror R. stated that the prosecution's burden of proof "gets a little bit less" due to evidence of Chavez's involvement in a prior shooting. I disagree.

During voir dire, defense counsel asked the prospective jurors if they understood and agreed that the prosecution bore the burden to prove guilt beyond a reasonable doubt. Juror R. did not indicate any disagreement.

Regarding evidence of Chavez's involvement in a prior shooting, Juror R. stated, "I think you're telling a story here [and] you're leaving one chapter out. To me ... that's the book of who the person is." When asked, "[The prosecution's] burden gets a little bit less because of the shooting?" Juror R. answered, "Yes."

Nevertheless, on another subject, Juror R. was asked, "Are you open to the possibility that someone may have said they did something and that might not in fact be true, or if he said he did it, are we done?" and the prospective juror answered, "It can go both ways."

In the context of the whole voir dire, the record supports the trial court's conclusion that Juror R. "could be fair and impartial." *People v. Luman*, 994 P.2d 432, 436 (Colo. App.1999). Specifically, Juror R. impliedly agreed with the defense counsel's summary of the prosecution's burden of proof, and expressly acknowledged on another issue that evidence "could go both ways."

Further, the trial court, in denying Chavez's challenge for cause to Juror R., acknowledged that Juror R. made contradictory statements, but reasoned that in the entirety of the voir dire, Juror R.'s statements supported the court's conclusion that he could serve as a fair and impartial juror. At the conclusion of voir dire, the trial court stated, "The Court listened to [Juror R.] talk about the chapters in the book and how they all make up character traits. Right before he finished that, he did talk about that he would have to listen to the evidence." Although the record does not show that Juror R. said he would have to listen to the evidence, the court's last statement was apparently a reference to Juror R.'s earlier statement that "it could go both ways."

---

**2.** The majority does not address whether the trial court abused its discretion in denying the challenge for cause to Juror M.

This case is unlike *Nailor*, 612 P.2d at 80, where the supreme court concluded that the trial court abused its discretion in denying a challenge for cause where a prospective juror expressed a "serious doubt" about her ability to be fair and impartial. Here, in contrast, Juror R. stated that the prosecution's burden gets "a little bit less" because of the evidence of the prior shooting. The trial court denied the challenge for cause to Juror R., concluding that Juror R. could follow the court's instruction on the limited purpose for which the shooting evidence would be admitted. The trial court did not abuse its discretion in reaching this conclusion.

### 3. Juror P.

Finally, Chavez asserts that the trial court abused its discretion in denying his challenge for cause to Juror P. Again, I disagree.

Juror P. expressed bias when he stated that "the shooting would color [his] opinion," and that he would "have a hard time getting past it." Considering this statement in the context of the entire voir dire of Juror P., I perceive no abuse of discretion.

As with Jurors M. and R., I limit my review of the trial court's denial of a challenge for cause to Juror P. to Chavez's contention that Juror P. exhibited impermissible bias. *See Carrillo I*, 946 P.2d at 547.

When asked if the shooting would make him more likely to "think that [Chavez] is ... guilty of the sex assault [in this case]," Juror P. replied, "Hard to say without hearing the evidence. Definitely, I would be coloring in that direction."

Prior to these statements, Juror P. stated, "I would expect a lot more than just hearsay.... I agree just because you're present doesn't mean you're guilty of anything."

In my view, Juror P.'s statements do not "compel the inference that [he] cannot decide crucial issues fairly." *Merrow*, 181 P.3d at 321. "[T]he trial judge is the only judicial officer able to assess fully ... what linguistically may appear to be inconsistent or self-contradictory responses," *Carrillo II*, 974 P.2d at 487 (quoting *Sandoval*, 733 P.2d at 321), including the ambiguous statement, "I would be coloring in that direction."

Further, considering the whole voir dire, "counter-balancing information" showed that Juror P. could serve as an impartial juror, specifically, his statements that he would need to hear the evidence and that he would expect to hear more than hearsay evidence.

It would have been better practice for the trial court or the prosecution to rehabilitate these prospective jurors and to directly ask them if they could base their verdict on the evidence presented at trial and follow the trial court's instructions. *Morrison*, 19 P.3d at 672. Nonetheless, viewing the whole voir dire of Jurors M., P., and R., I conclude that the trial court acted within the scope of its broad discretion in denying Chavez's challenges for cause. Despite the statements at issue, all three jurors made statements during voir dire that I have discussed above, indicating that evidence of Chavez's involvement in a prior shooting was not determinative of his guilt in the present case. Accordingly, I conclude the trial court did not abuse its discretion when it denied Chavez's challenges for cause to the three prospective jurors.

### III. Cross–Examination

Chavez next contends that the trial court abused its discretion and denied him his right to confront a witness when it sua sponte ordered him to stop repeatedly asking the witness the same question. I disagree.

### A. Standard of Review

The Confrontation Clause of the United States Constitution guarantees the right of a criminal defendant to cross-examine witnesses testifying for the prosecution. *Vega v. People*, 893 P.2d 107, 118 (Colo.1995). "[I]t is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness'[s] credibility, especially cross-examination concerning the witness'[s] bias, prejudice, or motive for testifying." *Id.* (quoting *Merritt v. People*, 842 P.2d 162, 167 (Colo.1992)).

However, a trial court has "wide latitude ... to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the is-

sues or interrogation which is repetitive or only marginally relevant." *Id.* (quoting *Merritt,* 842 P.2d at 166). Thus, the trial court has discretion to determine the scope and the limit of cross-examination, and absent an abuse of discretion, its ruling will not be disturbed on review. *Id.* Only error that affects the "substantial rights" of the defendant may warrant reversal. C.A.R. 35(e); *People v. Welsh,* 80 P.3d 296, 310 (Colo.2003).

### B. Analysis

During cross-examination, defense counsel repeatedly asked Michael Cordova, one of the men involved in the sexual assaults of C.R., the victim, if he had spoken with Detective Donohoe about Chavez and the victim while also negotiating a plea agreement for his own case. Defense counsel asked Cordova at least nine times about his initial meeting with the detective in connection with his attempt to work out a plea agreement with the district attorney's office.

The trial court then asked the parties to approach the bench, and asked defense counsel, "Why do you keep going over the same things? I know you're trying to make a point that [Cordova] changed his story, but you're asking the same thing over and over and over again." The court added, "[I]f you want to point out inconsistencies, that's one thing. Let's not simply repeat it over and over again." After defense counsel changed the line of questioning and Cordova completed his testimony, the court informed defense counsel,

> [C]orrect me if I'm wrong, but I don't think I limited you … I simply had sustained some objections [to questions] that had been asked and answered.... I wasn't trying to cut down the way that you impeached [Cordova]. So I hope that you didn't take me asking you to approach this bench as to cut off your questions.

Here, the trial court placed reasonable limits on defense counsel's cross-examination based on a concern for repetitiveness. The record shows that defense counsel had already established Cordova's bias, prejudice, or motive in testifying against Chavez. Thus, I would conclude the trial court did not abuse its discretion in ruling that defense

counsel's repeatedly examining Cordova regarding the timing of his meeting with the detective and his plea agreement did not materially advance the "truth-seeking function of the trial." *People v. James,* 40 P.3d 36, 43 (Colo.App.2001).

Because Cordova had finished testifying prior to the trial court's stating, "I don't think I limited you," Chavez had the option to recall Cordova as a witness. However, the record shows that defense counsel did not ask to recall Cordova in order to examine him with new questions or in a different manner. *Cf. People v. Johnson,* 30 P.3d 718, 726 (Colo.App.2000) (it is within the sound discretion of the trial court to choose whether to permit a party to recall a witness). It was within the trial court's "wide latitude" to reasonably limit defense counsel's repeating the same question to Cordova. *Vega,* 893 P.2d at 118. Accordingly, the trial court did not abuse its discretion when it ordered Chavez's counsel to stop the repetitive questioning of Cordova.

### IV. DNA Evidence

Chavez contends that the trial court abused its discretion when it overruled his objection to the prosecutor's characterization of DNA evidence during closing argument, and thereby denied Chavez's motion for a mistrial. I disagree.

### A. Standard of Review

The scope of final argument rests in the sound discretion of the trial court, and its ruling will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Valdez,* 725 P.2d 29, 32 (Colo.App.1986). A contention that the prosecution engaged in improper argument must be evaluated in the context of the argument as a whole and in light of the evidence. *People v. Esquivel–Alaniz,* 985 P.2d 22, 23 (Colo.App.1999).

Because Chavez objected to the prosecutor's closing remarks, I review the trial court's ruling for harmless error. *Crider v. People,* 186 P.3d 39, 42 (Colo.2008). A trial error will be disregarded as harmless when-

ever there is no reasonable probability that it contributed to the defendant's conviction. *Id.*

### B. Analysis

Closing argument may never be used to mislead or unduly influence the jury. *Domingo–Gomez v. People*, 125 P.3d 1043, 1049 (Colo.2005). A prosecutor may not refer to facts not in evidence or make statements reflecting his or her personal opinion or personal knowledge. *People v. Walters*, 148 P.3d 331, 334 (Colo.App.2006).

Here, the statement at issue concerns the results of a DNA test. Chavez's expert witness testified regarding the results of a genetic mixture taken from a sample of the front inner crotch of the victim's jeans. The expert witness testified that "[C.R.] and [codefendant Smith] are included in this mixture," and that "the only genetic marker that can't go back to either [C.R. or codefendant Smith] [is] this [allele] 16 at a marker called vWA." The expert agreed with the prosecutor that "16 on the vWA cannot be attributed to either [C.R. or codefendant Smith]." The expert witness then testified that "Chavez does carry a 16 at that particular marker [vWA]," and added, "However, when dealing with a DNA mixture like this, you have to look at the whole profile ... it's stated in my report there's not enough genetic information to include [Chavez] in that mixture." According to the expert witness, "[j]ust having a 16 is fairly inconclusive," although he also agreed that nobody involved in this case except Chavez possessed the allele in question.

During closing argument, the prosecutor stated:

> [T]here is an allele remaining that is consistent with the defendant's allele on that marker.... Is it enough genetic information for [the expert] to be able to tell you that it is a match like he was able to tell you with [codefendant Smith]? No. But it is another piece of consistent evidence for you to consider.

In light of conflicting evidence of the results of the DNA test, the prosecutor did not engage in improper argument or misrepresent the evidence to the jury. *Esquivel–Alaniz*, 985 P.2d at 23. Likewise, the prose-

cutor did not mislead or unduly influence the jury in relying on the expert witness's testimony that the DNA allele was inconclusive. *Domingo–Gomez*, 125 P.3d at 1049.

Further, even if the prosecutor's remark was improper, it was at most harmless error, because Chavez confessed twice to his sexual assault of the victim. *See Crider*, 186 P.3d at 44 (prosecutor's improper use of the term "lying" in closing argument was harmless error because there was no reasonable possibility, in light of evidence against defendant, that it contributed to his conviction).

Accordingly, the trial court did not abuse its discretion when it overruled Chavez's objection to the People's closing argument.

### V. Sexually Violent Predator

Chavez contends that the trial court erroneously designated him an SVP because he does not have prior felony sexual offense convictions. Chavez also contends that the trial court failed to make specific findings of fact in accordance with the SVP statute. I disagree with both contentions.

### A. Prior Felony Convictions

Chavez first contends that he does not have any prior felony sexual offense convictions, and therefore does not meet the criteria of Part 3C in the risk assessment screening instrument pursuant to the fourth statutory element of section 18–3–414.5(1)(a), C.R.S.2010. The People disagree, and assert that neither section 18–3–414.5(1)(a)(IV) nor the screening instrument lists prior felony sexual offense convictions as a necessary criterion for an SVP determination.

### 1. Standard of Review

The interpretation of a statute or regulation is a question of law subject to de novo review. *Cendant Corp. v. Dep't of Revenue*, 226 P.3d 1102, 1106 (Colo.App.2009).

An SVP is an offender (1) who is eighteen years of age or older as of the date of the offense; (2) who has been convicted of one of the offenses set forth in section 18–3–414.5(1)(a)(II), C.R.S.2010; (3) whose victim was a stranger to the offender or a person

with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) who, based on the results of a risk assessment screening instrument, is likely to subsequently commit one or more of the offenses specified in section 18–3–414.5(1)(a)(II). § 18–3–414.5(1)(a).

The division of criminal justice in consultation with the sex offender management board is required to establish the risk assessment screening instrument. § 18–3–414.5(1)(a)(IV), C.R.S.2010. Further, the screening instrument is a legal document which a probation officer, sex offender evaluator, or trained Department of Corrections staff person completes on behalf of a defendant. Because the screening instrument is a statute-based document used to determine SVP status, I review its interpretation de novo and apply the canons of statutory construction. *Cendant Corp.*, 226 P.3d at 1106; *see Benuishis v. Indus. Claim Appeals Office*, 195 P.3d 1142, 1145 (Colo.App.2008) (an appellate court reviews an agency's statutory and regulatory interpretations de novo; the court's primary task in interpreting regulations is to give effect to the intent of the enacting body; to discern that intent, the court first looks at the plain language of the regulation and interprets its terms in accordance with their commonly accepted meanings).

When interpreting a statute, I look first to the plain language of the statute before invoking alternative canons of statutory construction. *People v. Banks*, 9 P.3d 1125, 1128 (Colo.2000). To discern the legislative intent, a reviewing court looks at the statute's language and gives statutory words and phrases their plain and ordinary meaning. *People v. Davis*, 218 P.3d 718, 723 (Colo.App. 2008). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *People v. Hill*, 228 P.3d 171, 173–74 (Colo.App.2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

I read the statute as a whole to give "consistent, harmonious and sensible effect to all of its parts," in accordance with the presumption that the legislature intended the entire statute to be effective. *Id.* at 174 (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005)). "A statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004).

### 2. Analysis

Chavez does not cite to a case, and I am aware of none, to support his argument that prior felony sexual offense convictions are a criterion of the SVP risk assessment screening instrument. Therefore, I apply the rules of statutory construction to address his argument.

As relevant here, under the risk assessment screening instrument, an offender must score "3 or more on the 6–item scale in Part 3C." The six-item scale consists of six categories: (1) the offender has one or more juvenile felony adjudications; (2) the offender has one or more prior adult felony convictions; (3) the offender was employed less than full time at arrest; (4) any documented history of violence or weapon use (lifetime); (5) any documentation of substance-abuse related crime (lifetime); and (6) the offender has a history of more than one sexual assault victim or committing more than one sexual assault (lifetime).

Here, the plain language of the screening instrument states that its second criterion is "one or more prior adult felony convictions." It does not specify that such a conviction must be a sexual offense.

Nevertheless, Chavez contends that because the fourth prong of the definition of "sexually violent predator" is an offender who "is likely to subsequently commit another enumerated sexual offense, based on the result of the risk assessment screening instrument," *see* § 18–3–414.5(1)(a)(IV), C.R.S. 2010, the second criterion of the screening instrument must refer to prior adult felony convictions for sexual offenses. Chavez further contends that the second element of the screening instrument must refer to prior felony sex offenses because the screening in-

strument directly relates to issues of recidivism and risk assessment.

However, not only does the plain language of part III section Part 3C Section 2 of the risk assessment not support Chavez's contention, but also the criterion notes parenthetically, "(Include sex offenses, attempts and conspiracies, and deferred judgments/sentences)." This parenthetical indicates that sex offenses should be included in addition to any other prior adult felony convictions. This conclusion is further supported by the Sexual Violent Predator Assessment Screening Instrument Handbook (June 2003), which explains that "prior adult felony convictions" means that "prior adult criminal history is usually the strongest predictor of future criminality." *See* Handbook at 48 (June 2003), *available at http://dcj.state.co.us/ors/pdf/doc/Final% 20SVP.pdf.*

Also, the People assert, and I would agree, that a requirement of one or more prior adult felony sexual offenses is inconsistent with the SVP statute, which requires a conviction of only one of the enumerated sexual assault offenses in order to designate an offender as an SVP. § 18–3–414.5(1)(a)(II). Further, a history of one or more prior adult felony sexual offenses would render meaningless the sixth criterion, which requires "more than one sexual assault victim or more than one sexual assault (lifetime)."

Thus, I reject Chavez's contention that the screening instrument requires prior adult felony convictions to be sexual offenses. Accordingly, I conclude the trial court did not erroneously designate Chavez an SVP because it is undisputed that Chavez had adult felony convictions.

### B. Factual Findings

Chavez also argues that the trial court failed to make specific findings of fact to support its determination that he meets the criteria of the screening instrument pursuant to section 18–3–414.5(2), C.R.S.2010. I disagree.

### 1. Standard of Review

I defer to the trial court's findings of fact, and will disturb them only where there is clear error. *People v. Buerge,* 240 P.3d 363, 367 (Colo.App.2009). I review de novo whether the trial court's findings of fact are sufficient to support its determination that Chavez is an SVP. *Id.*

### 2. Analysis

The SVP statute requires the trial court to "make specific findings of fact," based on the results of the SVP risk assessment, and determine whether the defendant is an SVP. § 18–3–414.5(2); *Buerge,* 240 P.3d at 369. The statute does not provide specific procedures for the court to follow in making the requisite findings of fact. § 18–3–414.5(2). The trial court may rely on the screening instrument as evidence for its SVP determination. *See* § 18–3–414.5(2); *Buerge,* 240 P.3d at 369; *People v. Tixier,* 207 P.3d 844, 849 (Colo.App.2008).

As noted, to be found an SVP under Part 3C of the screening instrument, a defendant must satisfy three of the six criteria. During the sentencing hearing on September 2, 2008, the trial court agreed with Chavez's defense counsel that support for criterion one "was vague at best" and therefore, "I tend to check it no." The trial court also agreed that criterion six "should have been answered no." Regarding criterion two, the trial court disagreed with defense counsel's argument that Chavez did not satisfy the criterion, and noted that "by the time [Chavez] was assessed as an [SVP] he had been convicted of several felonies." The trial court concluded, "I do find three of the six criteria he meets, which qualifies him to be labeled as a[SVP] on the designation."

Under Part 3C of Chavez's screening instrument, criteria one, two, four, five, and six are checked "yes." Based on the sentencing hearing, the trial court found that Chavez did not satisfy criteria one and six, and therefore agreed that Chavez satisfies criteria two, four, and five. The screening instrument refers to "Denver Court Records" and two additional case numbers to support the finding that Chavez satisfied criteria two, four, and five. Thus, in the context of both the sentencing hearing and the screening instruments, the trial court made sufficient factual findings when it determined that Chavez was

an SVP under the risk assessment screening instrument.[3] *Buerge,* 240 P.3d at 370 (screening instrument can support a finding that the defendant meets the SVP criteria); *Tixier,* 207 P.3d at 849 (trial court properly relied on screening instrument as evidence that supported court's findings).

I conclude that these findings support the court's determination that Chavez is an SVP within the meaning of the statute.

## VI.   Cumulative Error

Chavez next contends that the cumulative effect of the foregoing alleged errors requires reversal of the judgment.

Even though I have concluded the individual allegations do not require reversal, numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial, in which event reversal is required. *People v. Roy,* 723 P.2d 1345, 1349 (Colo.1986). A defendant, although not entitled to a perfect trial, has a constitutional right to receive a fair trial. *Id.*

Under the facts of this case, and based on the discussion above, I conclude that no errors occurred during Chavez's trial so as to substantially prejudice his right to a fair trial.

## VII.   Conclusion

Accordingly, I respectfully dissent, because I would affirm Chavez's convictions. Because of my disagreement with the majority as to the challenges for cause, I would also

address and reject Chavez's other contentions.

---

3. The Colorado Supreme Court recently granted certiorari in *People v. Candelaria,* (Colo.App. No. 09CA1350, 2010 WL 3911447, Oct. 7, 2010) (not published pursuant to C.A.R. 35(f)) *(cert. granted* Apr. 25, 2011), to determine whether the trial court erroneously reached its SVP finding without making the scienter finding that is specifically required by *People v. Stead,* 66 P.3d 117 (Colo. App.2002). Section 18–3–414.5(1)(a)(III) states that an SVP is an offender "whose victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization." In *Stead,* a division of this court held

that where the victim is not a stranger, for purposes of section 18–3–414.5(1)(a)(III), the court must be satisfied that the offender had a specific intent in forming the relationship. In *Candelaria,* a division of this court concluded that the trial court made sufficient factual findings in order to classify Candelaria as an SVP when it relied on underlying facts of the trial to determine the criterion of Candelaria's relationship with the victim for purposes of sexual victimization, and data sources such as a risk assessment instrument and the record, in order to determine the criterion of his likelihood to reoffend.