[No. F019265. Fifth Dist. Apr. 4, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK STEVEN GARCIA, Defendant and Appellant.

[No. F020493. Fifth Dist. Apr. 4, 1995.]

In re MARK STEVEN GARCIA on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 (b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III and IV.

COUNSEL

Michael J. McGinnis for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar A. Kerry and Robert P. Whitlock, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### HARRIS, J.—

#### STATEMENT OF THE CASE

By amended information filed on October 21, 1992, defendant Mark Steven Garcia was charged as follows: rape by a foreign object and lewd act upon a child, Danielle M., on and between October 1, 1991, and December 13, 1991 (counts I and II; Pen. Code,[1] §§ 289, subds. (a) through (j) and 288, subd. (a), respectively); lewd act upon a child, Sandra M., on and between August 23, 1988, and September 30, 1988 (amended at trial to have occurred on and between Aug. 23, 1987, and Sept. 30, 1987) (count III; § 288, subd. (a)); and three counts of lewd act upon a child, Vanessa M. (§ 288, subd. (a)), on and between July 1 and July 31, 1985 (count IV), August 1 and August 31, 1987 (count V), and September 1, 1985, and August 31, 1986 (count VI). The dates of count VI were amended during trial to on and between September 1, 1984, and August 31, 1985.

Defendant pled not guilty to all the charges, and jury trial was had. Defendant was convicted on all counts as charged.

Probation was denied, and defendant was sentenced to prison for a total term of eighteen years, as follows: the base term of six years on count I; a full, consecutive term of six years on count III; and three consecutive two-year terms (one-third the middle term of six years) on counts IV, V and VI. On count II defendant was sentenced to the midterm of six years, stayed pursuant to section 654.

Timely notice of appeal was filed.

In the unpublished portion of this opinion we will conclude that the trial court did not err in denying defendant's funding request for an investigator and expert, permitting introduction of expert child sexual abuse testimony, and belatedly giving CALJIC No. 2.80; nor did defendant receive ineffective assistance of trial counsel. In the published portion we hold that defendant's prosecution and conviction in counts IV and VI were not barred by the statute of limitations.

On October 26, 1993, a petition for writ of habeas corpus was lodged with this court (No. F020493). On January 4, 1994, this court ordered the petition consolidated with the instant appeal.

---

[1]All statutory references are to the Penal Code unless otherwise noted.

## STATEMENT OF FACTS

*Danielle M.*

In December of 1991, Danielle M., who lived with her grandmother, Sue M., spent a Friday night at defendant's home. Sue and defendant's mother, Mary Lue Garcia, are twin sisters. Defendant had called and asked Sue if Danielle could visit defendant's two small sons. At the time, defendant lived in a duplex with his wife and two sons at 87 North H Street in Porterville. The other unit was occupied by defendant's mother, Mary Lue. Mary Lue operated a child-care center in her home.

When Danielle arrived at defendant's duplex, she began playing television video games with defendant's sons, Matthew and Jacob. Defendant's wife, Shirley Garcia, was at work at that time.

While Danielle lay on her stomach watching Matthew and Jacob play video games, defendant sat next to Danielle. Danielle was wearing pants and a T-shirt. Defendant put his hand under Danielle's pants and underpants, and put his finger in her vagina two times.

Danielle told defendant to stop and she got up and went to the couch. She lay on the couch hoping defendant would stop touching her. However, defendant asked her to sleep on the waterbed in his bedroom. Danielle declined to go. She pretended she was asleep again, hoping defendant would leave her alone. Defendant then picked her up from the couch, carried her into the bedroom and put her on his waterbed.

Matthew, who was five years old at the time, was on the waterbed when defendant put Danielle on the bed. Defendant lay down next to her under the covers. Defendant again inserted his finger in Danielle's vagina, underneath the nightgown and underpants she was now wearing. After a while, defendant removed his finger and removed his shorts. He then put his penis on her leg. After a short time, defendant got up and took Matthew to a different room. Danielle got up, went to the bathroom and went to the couch where she went to sleep.

The incident on defendant's waterbed was disclosed when Danielle was playing "Truth or Dare" with two other girls at defendant's mother's child-care center. Christina, one of the other girls, dared Danielle to tell the truth about something important that had happened to her. Danielle told Christina about the molestations. Christina then told Sandra M., Danielle's cousin, who that day was running the day-care center.

*Vanessa M.*

Vanessa M. had known defendant since she was a little girl. She was 13 years old at the time of trial. Vanessa's mother, Esther M., would often leave Vanessa at Mary Lue's child-care center when Vanessa was small.

Vanessa was in kindergarten during the 1984-1985 school year. She recalled that her kindergarten pictures had been taken when she was about five or six years old. One day near the time her pictures were taken, she took the bus from school to Mary Lue's day-care center about 12:30 p.m. When she arrived, there were other children at the center, and defendant was also there.

As Vanessa was lying on the floor taking a nap at the center, defendant picked her up, took her to a bedroom and placed her on the bed. Vanessa could not recall whether she was awake or asleep when she was lying on the floor. Defendant removed Vanessa's dress, leotards and panties. He then rubbed her vagina and chest with his hands. Vanessa could not recall how long he rubbed her, but when he was finished, he redressed her and took her back to the couch. Vanessa did not tell anyone what had happened because she was afraid her father might kill defendant.

On another day in the summer of 1985, defendant took Vanessa, Sandy Ann M. and Joaquin M., defendant's niece and nephew, to Murray Park in Porterville for the day. They left in defendant's car about 9:30 a.m. and returned that afternoon about 5:30 or 6 p.m.

After playing at the park, they all went to McDonald's restaurant to eat. Defendant then dropped Sandy Ann and Joaquin at their home. He took Vanessa to his house, but she could not remember what house that was.[2] She recalled being on defendant's bed and defendant removing her bottom clothes. Defendant then inserted his finger into her vagina, licking his finger afterwards, and then he licked her vagina. Later, defendant played with his penis until "white stuff" came out onto Vanessa's leg. After wiping her leg with a napkin, defendant helped Vanessa get dressed and took her home. Vanessa did not mention this incident to anyone because she was afraid.

Vanessa also recalled being touched in her vaginal area by defendant once when she, her mother and her sister, Melinda, went to Mary Lue's house to show her some pictures. The photos were eighth-grade pictures of Vanessa's brother, Ismael. Defendant followed Melinda and Vanessa into the kitchen

---

[2]After Vanessa reported the molests, she pointed out a house located at 234 West Date Street as the house where she thought the molest occurred.

when they went to get a drink of water. Defendant told Melinda to leave and cornered Vanessa. He began to rub her vagina through her clothing. When defendant stopped, Vanessa went to the living room and sat next to her mother. She later told her mother defendant had touched her and she did not want him touching her any more.

*Sandy Ann M.*

Sandy Ann M. is defendant's niece. Sandra M. is Sandy Ann's mother and defendant's sister. At the time of trial, Sandy Ann was 11 years old and in the 6th grade.

In August of 1988, Sandy Ann spent the night at defendant's home at 87 North H Street. Sandy Ann put on a nightgown that went down to her knees to get ready for bed. She lay down on the couch on her stomach with a blanket covering the bottom half of her body. As she read a book, defendant sat down next to her and slid his hand under the blanket, her nightgown and panties. While defendant had his hand on her "butt," Sandy Ann asked him what he was doing. Defendant responded, "It's only me."

Defendant removed his hand from Sandy Ann's bottom when Shirley, defendant's wife, entered the room. Sandy Ann revealed the molest to her mother in February 1992, when the other reports regarding defendant were made and her mother asked her if defendant did anything to her.

*Defense*

Defendant testified his cousin, Danielle M., spent the night at his home at 87 North H Street in 1991. He denied, however, having molested Danielle at any time. During Danielle's visit, his mother, father and sister visited his home at various times during the evening. Defendant further testified his mother stopped by at about 9 p.m. and spoke with Danielle. Danielle did not say anything about having been molested.

Defendant testified he never lived at 234 West Date Street in Porterville. According to defendant, he worked for a tile company and did not live in Porterville full time during most of 1985. He denied ever visiting his mother's day-care center on a weekday in 1985 because he worked full time that year.

He testified he was never present at his mother's house in August 1987 when Vanessa M. was there.

Defendant testified he lived in Palmdale with his family during all of 1988. He lived in towns other than Porterville between 1986 and 1990. He also denied ever having molested Vanessa M. or Sandy Ann M.

.

Mary Lue Garcia, defendant's mother, testified defendant never worked for her at her day-care center. She did not recall Vanessa having attended the child-care center between September 1985 and July 1986. However, she conceded Vanessa's mother had written checks to Mrs. Garcia for Vanessa's care during September 1985.

Mrs. Garcia also testified defendant was not present at her house on the day Vanessa, Vanessa's mother and Vanessa's sister visited Garcia to show her Ismael's eighth-grade pictures.

The night Danielle M. slept over at defendant's duplex, Mrs. Garcia recalled speaking with Danielle. According to Mrs. Garcia, Danielle seemed "very happy."

DISCUSSION

I.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

V.

*Prosecution on Counts IV and VI Is Not
Barred by the Statute of Limitations*

Defendant contends the court erred by denying his demurrer to counts IV and VI of the information, which alleged, respectively, that Vanessa M. had, in July 1985 (count IV) and between September 1985 and August 31, 1986, (count VI) been molested. Subsequently count VI was amended to no later than August 31, 1985. No error occurred.

On October 23, 1992, defendant's demurrer to counts IV and VI of the information on the basis of the statute of limitations was heard and denied by Judge Conn.[4] At the start of trial before Judge Broadman, defendant made an oral motion indicating the demurrer had been denied without prejudice to being renewed before the trial judge. Defendant argued that evidence defendant had "committed" the crimes charged in counts IV and VI, which were

---

*See footnote, *ante,* page 1119.

[4]Respondent contends that because the record of the oral proceedings before Judge Conn is not part of the record on appeal, defendant's contention should be rejected. However, in criminal matters the statute of limitations is jurisdictional and may be raised at any time. (*People* v. *Morgan* (1977) 75 Cal.App.3d 32, 36 [141 Cal.Rptr. 863].) If the defendant's convictions are not within the statute of limitations, they must be reversed regardless of Judge Conn's reasons for refusing to sustain the demurrer. Thus, we reject respondent's contention.

alleged to have been committed more than six years before filing of the complaint, should be excluded until it was proved defendant "committed" a subsequent similar crime which is within the six-year statute of limitations. Defendant concluded that because the statute of limitations is a jurisdictional question, the court had no jurisdiction to take evidence regarding counts IV and VI. When the court questioned how the requirements of the statute could be met absent a trial on the charges, defendant suggested the alternative of instructing the jury that it could not convict defendant on counts IV and VI unless they also found him guilty on count V. The court agreed the jury should be so instructed.[5] After trial, defendant again raised his statute of limitations argument in a motion for new trial, which was denied. ■ On appeal defendant again contends prosecution on counts IV and VI is barred by the statute of limitations.

Counts IV and VI charged violations of section 288, subdivision (a). Maximum punishment for this offense is eight years in state prison. Section 800 provides that "prosecution for an offense punishable by imprisonment in state prison for eight years or more shall be commenced within six years after commission of the offense." Because prosecution of the defendant on counts four and six did not occur until 1992, and since both crimes charged in those counts were alleged to have been committed no later than August 31, 1985, the six-year statute of limitations as provided in section 800 had run by the time prosecution had begun. However, the application of section 800 is qualified by section 803, which provided, in pertinent part:

"(a) Except as provided in this section, a limitation of time prescribed in this chapter is not tolled or extended for any reason.

" . . . . . . . . . . . . . . . . . . . . . .

"(f) Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of the date of a report to a responsible adult or agency by a child under 17 years of age that the child is a victim of a crime described in Section 261, 286, 288, 288a, or 289.

"For purposes of this subdivision, a 'responsible adult' or 'agency' means a person or agency required to report pursuant to Section 11166. This subdivision shall only apply if:

---

[5]The jury was instructed as follows: "This action was commenced on February the 28th–February the 18th, 1992. The defendant cannot be convicted of child molest as set forth in counts four and six of the information unless you find first and as an entire jury beyond a reasonable doubt that the defendant committed the offense of violation of Penal Code section 288(a) in count five within six years of the commencement of this action and, two, that the child, if under the age of 17 reported the incident to a responsible adult within one year of the commencement of this action."

"(1)   The limitation period specified in Section 800 or 801 has expired, and

"(2)   *The defendant has committed at least one violation of Section 261, 286, 288, 288a, or 289, against the same victim within the limitation period specified for that crime in either Section 800 or 801.*" (Italics added.)

Defendant and respondent agree that where the statutory language is clear and unambiguous, the court need not interpret or construe the language to determine the legislative intent. (See *People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].) They simply disagree on the meaning of the language used in subdivision (f) of section 803. Neither cites any authority for their position, and the issue appears to be one of first impression, as our research discloses no cases which have applied the provision in question. Subdivision (f) of section 803 was added in 1989, before the six-year limitation period had run on the 1984-1985 offenses. Thus, it became applicable to defendant's conduct when it went into effect. (*People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1107-1108 [220 Cal.Rptr. 339].)

Defendant contends the meaning of the statute is clear. However, he does not indicate what the "meaning" is. He simply argues that if the Legislature had intended the statute of limitations to be tolled or extended simply by concurrently pleading at least one of the enumerated offenses as to the violation within the limitation period, it could have written the statute differently. It appears defendant is contending the use of the word "committed" in subdivision (f) (2) of section 803 means the defendant was "convicted" of at least one of the enumerated offenses against the same victim within the statute of limitations. As will be seen, the language is not susceptible to this meaning, and it is clear the statute was tolled in this case.

Where the problem of construction concerns the meaning of words used in the statute, the court must first look to the words used. "[T]he Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4) . . . ." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Wilcox* (1986) 177 Cal.App.3d 715, 717 [223 Cal.Rptr. 170].)

As argued by respondent, had the Legislature intended section 803, subdivision (f) to apply only after the defendant was convicted of a crime against the same victim which occurred within the statute of limitations, it would have made it clear that conviction, not commission, was required. As

defined by Webster's New World Dictionary (2d college ed. 1982) at page 286, "commit" means: "4. to do or perpetrate (an offense or crime)." It does not mean "to be convicted" of an offense or crime.

The case of *People* v. *McClanahan* (1992) 3 Cal.4th 860 [12 Cal.Rptr.2d 719, 838 P.2d 241], provides some support. There, in construing section 12022.1, the court distinguished the words "commit" and "conviction." " 'Section 12022.1 punishes a person who *commits* a new felony while released from custody on an earlier felony of which he ultimately is *convicted*; enhancements based on prior felony convictions punish persons who *commit* new crimes only after *conviction* of earlier felonies.' [Citation.]" (3 Cal.4th at p. 870, italics added.)

Here, given the language of the statute, the court properly left it to the trier of fact to determine if defendant had "committed at least one violation of Section . . . 288 . . . against the same victim within the limitation period specified for that crime in either Section 800 or 801." Defendant contends that if the Legislature had intended such a result, it would have used the words "accused" of or "charged" with instead of "committed." However, had the Legislature used the word "accused" of or "charged" with instead of "committed," as defendant suggests it could have done, it would have greatly enlarged the class of persons falling within its provisions, which the Legislature obviously did not intend. In that situation, regardless of whether the defendant actually committed an enumerated offense against the same victim within the statute of limitations, so long as the defendant was accused or charged with such a violation the defendant could be convicted of crimes whose normal statute had already run. On the other hand, if the word "committed" were to require preexisting "conviction," a minimum of two trials involving the same victim and the same defendant would be required. The burden on the victims, the defendants and the state would be tremendous. This is an absurd result, and one the Legislature could not have intended.

In short, the word "committed" is clear language with a clear meaning that encompassed the facts of the instant case. Because the language is neither ambiguous nor reasonably susceptible to two constructions, it is unnecessary to resort to the rule of construction that the language should be construed in a light most favorable to defendant. (See *In re Tartar* (1959) 52 Cal.2d 250, 256-257 [339 P.2d 553].)

Furthermore, the jury instruction given here clearly complied with the mandate of the statute by requiring the crime alleged to have been committed within the statute of limitations be found to have actually been committed on the same victim by the same defendant before the jury could convict of the offenses alleged to have been committed earlier.

## Disposition

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Martin, Acting P. J., and Franson, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.