2012 COA 141

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John Andrew DOUBLEDAY, Defendant–Appellant.

No. 08CA2433.

Colorado Court of Appeals, Div. II.

Aug. 30, 2012.

As Modified on Denial of Rehearing Oct. 25, 2012.

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan M. Kratz, Deputy Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

¶ 1 Defendant, John Andrew Doubleday, appeals from the judgment of conviction entered on jury verdicts finding him guilty of first degree felony murder and second degree murder. We affirm and remand.

¶ 2 Among other issues, we consider the validity of a jury verdict finding a defendant guilty of felony murder but not guilty, based solely on a duress defense, of the predicate offense. As a matter of first impression, we hold that if the prosecution proves each element of the predicate offense beyond a reasonable doubt, the jury need not necessarily convict the defendant of the predicate offense to convict him of felony murder.

## I. Background

¶ 3 The charges against defendant arose from a December 2006 shooting at a convenience store. The store's video surveillance camera recorded the incident. The video, which has no sound, showed that defendant entered the store and, apparently, asked the clerk for a pack of cigarettes. As the clerk handed defendant the cigarettes, defendant pulled out a shotgun and pointed it at the clerk. As the clerk turned and began walking away, defendant shot and killed her.

¶ 4 Defendant was subsequently arrested and charged with first degree murder after deliberation, first degree felony murder, attempted aggravated robbery, two counts of being an accessory to a crime, and two crime of violence counts.

¶ 5 At the trial, defendant testified that he had owed approximately $1,500 to a member of the Gallant Knights Insane (GKI) gang. Defendant said that two days before the convenience store incident, the gang member came to his apartment and ordered defendant to accompany him to another GKI member's house. Once there, the gang member confronted defendant about the debt and threatened to kill his family if it was not repaid. Several GKI members then assaulted defendant, knocking him unconscious.

¶ 6 The next day, the GKI members took defendant to his apartment, where they were joined by other friends and began drinking.

Defendant's family was also at the apartment. Later that night, the GKI member to whom defendant owed the money again confronted defendant about the debt. He told defendant to go "do a lick," which defendant understood as slang for committing a robbery. He then threatened to kill defendant and his family if defendant did not return with the money to pay his debt, gave defendant a shotgun, and had a friend drive defendant to the convenience store.

¶ 7 The court instructed the jury on first degree murder after deliberation and the lesser included offenses of second degree murder, reckless manslaughter, and criminally negligent homicide. The court also instructed the jury on attempted aggravated robbery, including the affirmative defense of duress and the special findings required for the two crime of violence counts. Finally, the court instructed the jury on felony murder, predicated on the attempted aggravated robbery charge. The jury was not asked to consider the accomplice charges.

¶ 8 After the jury told the bailiff that it had reached its verdicts, but before it announced its verdicts to the court, the prosecutor asked the court to give the jury a special interrogatory on the attempted aggravated robbery count. The court discussed the request with both parties and, over defendant's objection, gave the following special interrogatory:

> If you find the defendant GUILTY of Count 3, Attempted Aggravated Robbery, disregard this instruction.
>
> If you find the defendant NOT GUILTY of Count 3, Attempted Aggravated Robbery, your foreperson should check one of two lines below with an "X". Only one line should be checked, and this Interrogatory should be signed by the Foreperson. Your decision in this Interrogatory must be unanimous.
>
> \_\_\_ We the jury find the defendant ... NOT GUILTY of Attempted Aggravated Robbery because we do not believe the People proved, with the exception of the affirmative defense of duress, one or more of the elements of Attempted Aggravated Robbery beyond a reasonable doubt.

> \_\_\_ We the jury find the defendant ... NOT GUILTY of Attempted Aggravated Robbery because we do not believe the People disproved one or more of the elements of the affirmative defense of duress beyond a reasonable doubt.

¶ 9 The jury completed the special interrogatory and returned verdicts finding defendant not guilty of attempted aggravated robbery based on duress, guilty of second degree murder, and guilty of felony murder.

¶ 10 Defendant moved for a judgment of acquittal pursuant to Crim. P. 29(c) based, primarily, on the felony murder conviction. Following a hearing, the court denied defendant's motion. The court then merged defendant's two murder convictions, and sentenced him to a term of life imprisonment in the custody of the Department of Corrections.

## II. Felony Murder Conviction

¶ 11 Defendant contends that we must vacate his felony murder conviction because the jury acquitted him of attempted aggravated robbery, the predicate offense for the felony murder charge. Under the particular circumstances presented here, we disagree. We also disagree with defendant that the trial court violated CRE 606(b) by giving the special interrogatory.

¶ 12 Defendant's contention raises a question of statutory interpretation, which we review de novo. *People v. Rowe*, 2012 COA 90, ¶ 10, 318 P.3d 57. When interpreting statutes, our primary goal is to ascertain and give effect to the legislature's intent. *Id.* To do so, we look first to the plain language of the statute, giving the words and phrases their plain and ordinary meanings. *Id.* Where the language is clear and unambiguous, we apply the statute as written. *Id.* However, if the language is susceptible of more than one meaning, we may consider other sources, such as legislative history, the underlying purpose of the statute, and the consequences of a given interpretation to determine the legislature's intent. *People v. Turecek*, 2012 COA 59, ¶ 11, 280 P.3d 73.

## A. The Felony Murder Statute

¶ 13 "The felony murder doctrine is designed to heighten penalties where death results during inherently dangerous felonies." *People v. Medina*, 260 P.3d 42, 46 (Colo.App.2010); *accord People v. Raymer*, 662 P.2d 1066, 1069 (Colo.1983); *see generally* 40 Am. Jur.2d *Homicide* § 65 (2012) ("The purpose of the felony-murder rule is to deter dangerous conduct by punishing as a first degree murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill. The traditional purpose of the felony murder rule is to punish accidental, negligent, or reckless killings that occur in the course of a distinct felony." (footnote omitted)).

¶ 14 As relevant here, section 18–3–102(1)(b), C.R.S.2011, provides:

A person commits the crime of murder in the first degree if ... he or she commits or attempts to commit [certain enumerated offenses, including robbery] and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

One of the elements of felony murder, therefore, is the commission or attempted commission of one of the enumerated offenses. *See People v. Fisher*, 9 P.3d 1189, 1191 (Colo. App.2000) (felony murder "requires as one of its elements that the principal commit a predicate felony"); *People v. Kittrell*, 786 P.2d 467, 469 (Colo.App.1989) ("The prosecution ... has to prove the homicide and all elements of the underlying felony beyond a reasonable doubt.").

¶ 15 We assume the legislature purposefully chose the particular language used in this statute. *See State v. Nieto*, 993 P.2d 493, 500 (Colo.2000) ("[I]t is presumed that the General Assembly meant what it clearly said."); *People v. Poage*, 272 P.3d 1113, 1116 (Colo.App.2011) ("We may not adopt a construction that renders any word superfluous."). Thus, it is important that the legislature chose to premise felony murder on a death that occurs during the *commission* of a

specific offense rather than during the commission of an offense *for which the defendant is then convicted*. *See People v. Garcia*, 33 Cal.App.4th 1119, 40 Cal.Rptr.2d 12, 17–18 (1995) (explaining that the plain meaning of "commit" is not "to be convicted of"); *State v. Pixton*, 2004 UT App 275, ¶ 9, 98 P.3d 433, 436 (similar); *see also Auman v. People*, 109 P.3d 647, 651 (Colo.2005) ("A *conviction* for the crime of felony murder requires that a death occur in the *commission* of a specifically enumerated felony.") (emphasis added); *People v. Thompson*, 328 Ill.App.3d 360, 262 Ill.Dec. 601, 765 N.E.2d 1209, 1212–13 (2002) (observing that a person can commit a crime without a formal judgment of conviction); *cf. People v. Rester*, 36 P.3d 98, 100 (Colo.App. 2001)(a person may be a victim of a crime even if the accused was not convicted of that crime).

¶ 16 Had the legislature intended to hold a defendant liable for first degree murder under a felony murder theory only if the defendant was convicted of the predicate offense, it could have written the statute accordingly. *See People v. Sheehan*, 168 Ill.2d 298, 213 Ill.Dec. 692, 659 N.E.2d 1339, 1342–43 (1995) ("Had the legislature meant for predicate offenses to include only DUI offenses resulting in convictions under the felony DUI statute ... we believe that it would have used the term 'convicted' rather than 'committed.' ").

¶ 17 Thus, it could have used language, similar to that found in other statutes, that would specifically require a conviction for the predicate offense as an element of felony murder, for example: "a person commits felony murder if he or she is convicted of [a specific enumerated offense] and, in the course of or in furtherance of the commission or attempted commission of that crime, or in immediate flight therefrom, the death of another occurs"; or "every person convicted of [a specific enumerated offense] shall be guilty of first degree felony murder if, during the commission or attempted commission of that crime, or in immediate flight therefrom, the death of another occurs." *See, e.g.,* §§ 18–1–408 (precluding multiple *convictions*, under certain circumstances, even though the defendant's conduct establishes

the *commission* of more than one offense), 18–1.3–801(1), (1.5) (habitual criminal statute), 18–2–206 (conspiracy statute), 18–18–405(2)(a) (increasing the felony class for unlawful distribution, manufacturing, dispensing, or sale of controlled substances "if the violation is committed subsequent to any prior conviction"), 42–2–125(1)(c) (requiring that a driver's license be revoked if the driver has "[b]een convicted of any felony in the commission of which a motor vehicle was used"), C.R.S.2011.

¶ 18 Therefore, based on the statute's plain language, we conclude that the predicate offense element of felony murder requires proof beyond a reasonable doubt only that the defendant committed or attempted to commit the predicate offense, and not that the defendant was convicted of the predicate offense. *See United States v. Greene,* 834 F.2d 1067, 1071 (D.C.Cir.1987) ("While the Government must prove beyond a reasonable doubt all the positive elements of the underlying felony, there is no requirement that it indict and convict the defendant on that underlying felony in order to secure a conviction for felony murder." (footnote omitted)); *Commonwealth v. Munchinski,* 401 Pa.Super. 300, 585 A.2d 471, 482–83 (1990) ("It is not necessary to find the appellant guilty of a felony before a finding of [felony] murder. . . . What is required is that the actor be found guilty of a homicide in the progress of committing a felony with sufficient evidence to establish a felony was in process and the killing occurred. Whether or not the statute of limitations has run on the underlying felony is immaterial, so long as the essential elements of [felony] murder are proven beyond a reasonable doubt."); *accord State v. White,* 239 Neb. 554, 477 N.W.2d 24, 25–26 (1991); *see also People v. Blue,* 253 P.3d 1273, 1277 (Colo.App. 2011) (" 'When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense.' " (quoting § 18–1–408(1), C.R.S. 2012)); *Barker v. California–W. States Life Ins. Co.,* 252 Cal.App.2d 768, 61 Cal.Rptr. 595, 600 (1967) (rejecting the argument that "there can be no 'commission of a felony' until there has been a conviction thereof").

¶ 19 Having reached this conclusion, we must now determine whether the prosecution has met the burden of proving that a defendant committed or attempted to commit the predicate offense if it fails to disprove the defendant's duress defense. Again, we begin with the plain language of the relevant statutes.

### B. Predicate Offense and the Duress Defense

#### 1. Plain Language

¶ 20 A person commits robbery if he "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18–4–301(1), C.R.S.2011. As relevant here, "[a] person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom . . . [h]e knowingly wounds or strikes the person robbed . . . with a deadly weapon." § 18–4–302(1)(b), C.R.S.2011. "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18–2–101(1), C.R.S. 2011.

¶ 21 We observe that the statutory section defining attempt contains a defense, *see* § 18–2–101(3), C.R.S.2011 (abandonment is an affirmative defense to attempt offenses); however, the sections defining aggravated robbery contain no exceptions or defenses, *see* §§ 18–4–301, 18–4–302, C.R.S.2011. Instead, defenses are defined in separate sections of the criminal code. As relevant here, section 18–1–708, C.R.S.2011, defines duress:

> A person may not be convicted of an offense, other than a class 1 felony, based upon conduct in which he engaged at the direction of another person because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist.

¶ 22 Generally, when a defense is defined in a separate section from the offense, it is considered an affirmative defense

rather than an element of the offense. *See People v. Whaley,* 159 P.3d 757, 759–60 (Colo. App.2006); *see also Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (under due process, the prosecution is only required to prove those elements contained in the definition of offense). Here, therefore, based on the language of the statutes, absence of duress is not an element of attempted aggravated robbery. Accordingly, even if the prosecution failed to disprove defendant's duress defense, it nonetheless may have succeeded in proving all the elements of attempted aggravated robbery, thereby proving that defendant committed the offense. See *Gallegos v. People,* 159 Colo. 379, 386, 411 P.2d 956, 959 (1966)("a crime consists of the union of an act and intent"), *superseded by statute on other grounds as stated in People v. Thornton,* 929 P.2d 729, 732 (Colo. 1996); see also *Hendershott v. People,* 653 P.2d 385, 390–91 (Colo. 1982).

¶ 23 We find further support for this position in the Colorado appellate courts' historical treatment of affirmative defenses.

### 2. Nature of Defenses

¶ 24 In Colorado, we recognize two types of defenses: traverse defenses and affirmative defenses. Traverse defenses "effectively refute the possibility that the defendant committed the charged act by negating an element of the act." *People v. Pickering,* 276 P.3d 553, 555 (Colo.2011); *see People v. Huckleberry,* 768 P.2d 1235, 1238–39 (Colo. 1989); *People v. Mullins,* 209 P.3d 1147, 1149 (Colo.App.2008). Affirmative defenses, on the other hand, "admit the defendant's commission of the elements of the charged act, but seek to justify, excuse, or mitigate the commission of the act." *Pickering,* 276 P.3d at 555; *accord People v. Miller,* 113 P.3d 743, 750 (Colo.2005); *Mullins,* 209 P.3d at 1149. Affirmative defenses do not apply where a defendant denies committing the crime. *People v. Hendrickson,* 45 P.3d 786, 791 (Colo.App.2001). The prosecution bears the burden of proof as to both types of defenses; however, with affirmative defenses, that burden does not arise until the defendant has presented some evidence in support of the defense. *People v. Hill,* 934 P.2d 821, 828 (Colo.1997); *People v. Reed,* 932 P.2d 842, 844 (Colo.App.1996).

¶ 25 If the evidence supports a traverse defense, the prosecution need do no more than prove the elements of the offense beyond a reasonable doubt. *See Pickering,* 276 P.3d at 555. By proving the elements, the prosecution necessarily will negate the traverse defense. For example, an alibi defense is a traverse defense because it "does not require proof or disproof of factual issues beyond those necessary to establish the elements of the offense charged." *Huckleberry,* 768 P.2d at 1239. To disprove an alibi defense, all the prosecution must do is establish an element of the offense: "namely, that the defendant was present ... at the scene of the event and that the defendant was personally responsible for the prohibited conduct." *Id.*

¶ 26 Conversely, if the evidence supports an affirmative defense, the prosecution must prove each element of the offense and also prove that the affirmative defense does not apply. *Id.* at 1238–39; *see Pickering,* 276 P.3d at 555; *Mullins,* 209 P.3d at 1149. Thus, although the prosecution's burden of proving that the affirmative defense does not apply is on a par with its burden to prove the elements of the offense, the defense is separate and distinct from those elements. *See Patterson,* 432 U.S. at 206–08, 97 S.Ct. 2319 (an affirmative defense does not negate any of the essential facts that must be proven to constitute commission of the crime; it constitutes a separate issue that must first be raised by the defendant); *People v. Garcia,* 113 P.3d 775, 784 n. 12 (Colo.2005) ("While a claimed affirmative defense is treated like an element of the offense, '[p]roof of an affirmative defense is separate and distinct from proof of the elements of [that] offense.'" (quoting in part *Gorman v. People,* 19 P.3d 662, 668 (Colo.2000))); *Reed,* 932 P.2d at 844 ("[A]n affirmative defense is distinguished from an element of the offense because it must be disproved by the prosecution only if the evidence gives rise to an issue with respect to its existence."); *see also Engle v. Isaac,* 456 U.S. 107, 120, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (rejecting the suggestion

that "whenever a State requires the prosecution to prove a particular circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime," because a "State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime"); *cf. Hill*, 934 P.2d at 828 (where evidence of insanity is presented, the prosecution still must prove both sanity and the mens rea element of the offense); *accord People v. Laeke*, 2012 CO 13, ¶ 13, 271 P.3d 1111.

¶ 27 Duress is an affirmative defense. *See* §§ 18–1–708, 18–1–710, C.R.S. 2011; *Bailey v. People*, 630 P.2d 1062, 1069 (Colo.1981). Thus, absence of duress is not an essential element of an offense that the prosecution must prove in order to prove that a defendant committed the offense, though such proof may be necessary for a conviction. *See Dixon v. United States*, 548 U.S. 1, 6, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) ("The duress defense ... may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself."); *Patterson*, 432 U.S. at 201, 97 S.Ct. 2319 (an affirmative defense is not a "fact essential to the offense charged"); *United States v. Petty*, 132 F.3d 373, 378 (7th Cir. 1997) ("An affirmative defense goes beyond the elements of the offense to prove facts which somehow remove the defendant from the statutory threat of criminal liability."); *see also People v. Fontes*, 89 P.3d 484, 486 (Colo.App.2003) ("A defendant who asserts an affirmative defense admits the doing of a charged act, but seeks to justify the act on grounds deemed by law to be sufficient to avoid criminal responsibility.").

¶ 28 Therefore, we conclude that the prosecution could prove that defendant committed attempted aggravated robbery without necessarily proving that he was not under duress at the time. *See Patterson*, 432 U.S. at 204–05, 97 S.Ct. 2319 ("[T]he Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" (quoting in part *In re Winship*, 397 U.S. 358,

364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970))); *State v. Lacy*, 187 Ariz. 340, 350, 929 P.2d 1288, 1298 (1996) ("[Arizona's felony murder statute] does not require that the defendant be charged and convicted of the underlying felony. The jury must simply find that the defendant committed or attempted to commit it."); *accord State v. Jones*, 274 Ga. 287, 553 S.E.2d 612, 614–15 (2001); *see also People v. Lucas*, 232 P.3d 155, 166 (Colo.App.2009) ("[P]redicate offenses are those for which all of the elements must be proved in order to sustain a conviction for a greater offense.").

### C. Application

¶ 29 Here, the completed special interrogatory shows that the jurors found defendant not guilty of attempted aggravated robbery because the prosecution failed to disprove one of the elements of duress and not because the prosecution failed to prove one of the elements of the offense. Thus, the jurors clearly believed that defendant attempted to commit aggravated robbery, but that he was not legally liable for the offense because he was under duress at the time. *See People v. Klebanowski*, 221 Ill.2d 538, 304 Ill.Dec. 357, 852 N.E.2d 813, 821 (2006) (" '[I]n felony murder, a defendant's liability is not limited to his culpability for commission of the underlying felony.' " (quoting *People v. Dennis*, 181 Ill.2d 87, 229 Ill.Dec. 552, 692 N.E.2d 325, 328 (1998))); *cf. People v. Anderson*, 28 Cal.4th 767, 122 Cal.Rptr.2d 587, 50 P.3d 368, 379 (2002) ("Defendant could not have killed during the perpetration of a crime of which he was *innocent.*" (emphasis added)); *Mahaun v. State*, 377 So.2d 1158, 1161 (Fla.1979) (the jury's conviction of the defendant for felony murder was erroneous because it found her guilty of the predicate felony's lesser included misdemeanor, indicating that she did not commit the predicate felony); *accord Brown v. State*, 959 So.2d 218, 221 (Fla.2007).

¶ 30 Therefore, because the record shows that the prosecution proved that defendant attempted to commit aggravated robbery as well as the other elements of felony murder, we will not disturb the jury's verdict convicting defendant for felony murder. *See People v. Prince*, 40 Cal.4th 1179,

57 Cal.Rptr.3d 543, 156 P.3d 1015, 1074 (2007) ("The jury may convict on a felony-murder theory if the felony is proved beyond a reasonable doubt even if the underlying felony has not been charged."); *see also Silva v. Wilcox,* 223 P.3d 127, 136 (Colo.App. 2009) ("It is our duty to reconcile the jury's answers to special verdicts, if it is at all possible, based upon the evidence and the instructions given. Further, if there is a view of the case that makes the jury's answers consistent, the answers must be resolved that way." (citations omitted)); *accord Sch. Dist. No. 12 v. Sec. Life of Denver Ins. Co.,* 185 P.3d 781, 787 (Colo.2008); *cf. Auman,* 109 P.3d at 663–71 (where the jury instruction erroneously omitted the required mens rea for one of the elements of the predicate felony, thereby casting doubt on whether the prosecution proved that element, both the felony murder and the predicate felony convictions were vacated); *People v. Serrano,* 286 Ill.App.3d 485, 222 Ill.Dec. 47, 676 N.E.2d 1011, 1015 (1997) (the court determined that the defendant, who had committed robbery under compulsion, was not liable under a felony murder theory for a murder unexpectedly committed by those who had compelled him).

### D. CRE 606(b)

¶ 31 We also conclude that the trial court did not violate CRE 606(b) by giving the special interrogatory.

¶ 32 CRE 606(b) prohibits a juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or ... concerning his mental processes in connection therewith." This rule "precludes the use of jurors' post-verdict statements to the court to impeach the unanimous verdict." *Hall v. Levine,* 104 P.3d 222, 224 (Colo.2005).

¶ 33 Here, the jury received and completed the special interrogatory before it announced its verdict; thus, it was not a "post-verdict statement." *See Stewart v. Rice,* 47 P.3d 316, 322 (Colo.2002) ("[A] jury may change or modify its verdict up to the point the trial court accepts the verdict and discharges the jury, [but] the court may not recall the jurors for this purpose once they

leave the judge's control." (footnote omitted)); *see also Hall,* 104 P.3d at 225 (jurors are estopped from impeaching the verdict once the court has heard and received it). Further, the jury's completion of the special interrogatory constituted neither an affidavit nor testimony. *See Stewart,* 47 P.3d at 320 ("CRE 606(b) is a broad ban against the solicitation and use of juror testimony, affidavits, or statements addressing the validity of a jury verdict."); *cf. People v. Juarez,* 271 P.3d 537, 545–46 (Colo.App.2011) (the court's detailed questioning of the jurors about an inconsistent verdict violated CRE 606(b)).

¶ 34 The special interrogatory also instructed the jurors to complete it only if they found defendant not guilty of the predicate offense; thus, it did not usurp the jury's duty to deliver a general verdict. *See Commonwealth v. Durham,* 57 S.W.3d 829, 837 (Ky.2001); *Commonwealth v. Licciardi,* 387 Mass. 670, 443 N.E.2d 386, 390–91 (1982).

¶ 35 Moreover, for the reasons explained above, the special interrogatory was necessary here to ensure the validity of a guilty verdict on the felony murder charge. *See People v. Fury,* 872 P.2d 1280, 1283 (Colo. App.1993) (the court held that, although the special interrogatory was not necessary, it ensured unanimity and protected the defendant from an inconsistent verdict); *see also Hall,* 104 P.3d at 225 ("CRE 606(b) is designed to promote finality of verdicts, shield verdicts from impeachment, and protect the privacy of jurors."); *accord Stewart,* 47 P.3d at 322; *cf. People v. Collins,* 752 P.2d 93, 97 (Colo.1988) (a special interrogatory is necessary for sentencing purposes if a jury acquits the defendant by reason of impaired mental condition).

¶ 36 Therefore, we conclude that the trial court properly exercised its discretion by giving the special interrogatory relating to the attempted aggravated robbery charge. *See Molnar v. Law,* 776 P.2d 1156, 1158 (Colo.App.1989) ("[T]he submission of special issues of fact to the jury lies within the sound discretion of the trial court.").

### III. Jury Instructions on Duress

¶ 37 Defendant contends that the trial court erred by failing to instruct the jury

that duress is a defense to (1) felony murder and (2) second degree murder. We disagree.

¶ 38 The trial court is required properly to instruct the jury on the law applicable to the case. *People v. Oslund,* 2012 COA 62, ¶ 15, 292 P.3d 1025. A defendant is entitled to an affirmative defense instruction if he presents some credible evidence to support each element of the defense. § 18–1–407(1), C.R.S.2011; *People v. Speer,* 255 P.3d 1115, 1119 (Colo.2011); *Oslund,* at ¶ 16. Whether a defendant has met this burden is a question of law that we review de novo, considering the evidence in the light most favorable to the defendant. *See O'Shaughnessy v. People,* 2012 CO 9, ¶ 13, 269 P.3d 1233; *People v. Palomo,* 272 P.3d 1106, 1110 (Colo.App.2011).

¶ 39 Section 18–1–708 provides that duress is not a defense to class 1 felonies. Felony murder is a class 1 felony. § 18–3–102(3), C.R.S.2011. Thus, duress is not a defense to felony murder. *People v. Al-Yousif,* 206 P.3d 824, 830–31 (Colo.App.2006).

¶ 40 Regarding the second degree murder charge, defendant testified that a GKI member threatened to kill his family if he did not repay his debt and then gave him a gun. Another GKI member drove defendant to the convenience store, and waited to drive him back to his apartment. However, defendant entered the convenience store alone and there was no evidence that any threats motivated defendant to shoot the clerk. In fact, defendant testified that the gun discharged accidentally, and that he had not intended to shoot anyone.

¶ 41 Based on this evidence, we conclude that although there was evidence to support a duress instruction on the attempted aggravated robbery charge, there was no evidence to support a duress instruction on the second degree murder charge. *See Speer,* 255 P.3d at 1118–19 ("We have consistently construed our own statute ... as making the defense of duress ... unavailable in the absence of a specific and imminent threat of injury under circumstances leaving the defendant no reasonable alternative other than to violate the law *for which he stands charged.*" (emphasis

added)); *Palomo,* 272 P.3d at 1110; *People v. Yaklich,* 833 P.2d 758, 763 (Colo.App.1991).

¶ 42 Therefore, we conclude that the trial court did not err by refusing to instruct the jury that duress was a defense to either felony murder or second degree murder.

## IV. Challenge for Cause

¶ 43 Defendant contends that the trial court erred by denying his challenge for cause to a potential juror because she consistently expressed doubt about her ability to be fair and impartial. We disagree.

¶ 44 Every criminal defendant is guaranteed the right to a fair trial by an impartial jury. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Chavez,* 313 P.3d 594, 602 (Colo.App.2011). To ensure this right, the trial court must excuse biased or prejudiced persons from the jury. *People v. Young,* 16 P.3d 821, 824 (Colo. 2001); *People v. Roldan,* 353 P.3d 387, 389 (Colo.App.2011) *(cert. granted* Feb. 13, 2012). The court must grant a challenge for cause and dismiss a prospective juror if he or she is "'unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions.'" *Dunlap v. People,* 173 P.3d 1054, 1081–82 (Colo.2007) (quoting *People v. Harlan,* 8 P.3d 448, 460 (Colo.2000)); *see Chavez,* 313 P.3d at 599. However, a potential juror shall not

be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

§ 16–10–103(1)(j), C.R.S.2011; *see Young,* 16 P.3d at 824; *Chavez,* 313 P.3d at 599.

¶ 45 The trial court is granted substantial discretion in deciding whether to grant or deny a challenge for cause because it is in the best position to assess a potential juror's demeanor, credibility, and sincerity. *Carrillo v. People,* 974 P.2d 478, 485–86 (Colo.1999); *Chavez,* 313 P.3d at 600–01;

*Roldan*, 353 P.3d at 388. We will not disturb the trial court's decision unless it is manifestly arbitrary, unreasonable, or unfair. *Chavez*, 313 P.3d at 595–96. However, if a trial court erroneously denies a defendant's challenge for cause, reversal is mandatory if the record shows that the defendant used a peremptory challenge to excuse the prospective juror and exhausted his remaining peremptory challenges. *Roldan*, 353 P.3d at 388; *People v. Merrow*, 181 P.3d 319, 320 (Colo. App.2007).

¶ 46 Here, during its introductory remarks and general questioning of the prospective jury panel, the court asked whether any of the jurors had heard anything about the case before coming to court that day. The court then asked for any jurors with such information to remain behind during the lunch recess for individual questioning. One of the jurors who did so told the court that she remembered seeing media coverage when the incident occurred. After a brief discussion, the court asked her, "In any event, can you take all the information you believe you remember about the case and put it aside and wait for presentation of evidence and make your determination based upon what you hear in the courtroom?" She responded, "I would hope so, but I don't know. It was pretty horrifying...."

¶ 47 The prosecutor then asked the potential juror a series of questions, essentially, whether she could follow the law, be fair and impartial, carefully consider the court's instructions, and rely on the evidence presented during the trial to reach her verdict. To all of these questions, the juror responded either, "I don't know. I would hope so," or "I think I can do that."

¶ 48 The potential juror also explained that she had served on several juries before, that she "thinks" and "hopes" that she takes her duties as a juror seriously, and that "[she was] not asking to be excused" but just wanted to explain how she felt because the case was "very upsetting" to her.

¶ 49 Defense counsel also asked the potential juror a series of questions about her ability to be fair and impartial. Specifically, defense counsel asked the juror if she had formed an opinion about defendant's guilt based on the media coverage. She said, "I guess I would have to say, yes, it seemed fairly obvious from what was on television...." Defense counsel then asked, "Have you in your mind ... do you think honestly that you're biased against [defendant] today based upon what you know?" The juror responded, "I hope not. But I don't know. Again, I'm not sure."

¶ 50 At the end of this discussion, defense counsel challenged the juror for cause, which the court denied.

¶ 51 Later, during the general voir dire of the prospective jury panel, defense counsel asked the jurors if they agreed with the concept that, even though a surveillance video might show how an incident happened, it might not necessarily show why it happened or what a defendant was thinking. The same potential juror responded, "It shows that he did do it, but again there would be reasons that it happened.... So to see it and hear more, I guess you have to keep an open mind." Defense counsel then asked her if she thought she would be able to do that, and she said, "I don't know. I hope so."

¶ 52 At the end of voir dire, defense counsel again challenged the same potential juror for cause, along with several other jurors. The prosecutor was given an opportunity to rehabilitate the challenged jurors, but asked no further questions of the potential juror at issue here. The court then denied defendant's challenge as to that juror. Defense counsel ultimately excused her with a peremptory challenge, and exhausted his remaining peremptory challenges.

¶ 53 "A criminal case ... will likely generate public interest, and it is not unusual for potential jurors to have heard or read something about the case." *People v. Arevalo*, 725 P.2d 41, 45 (Colo.App.1986). Thus, "[i]t would be an impossible standard for the courts to hold that jurors can have no familiarity with a case." *Id.* at 46; *accord People v. Gurule*, 628 P.2d 99, 102 (Colo. 1981). Further, "[t]he mere fact that a juror's answers to questions are equivocating or contradictory is not enough, by itself, to overturn the denial of a challenge for cause."

*People v. Phillips,* 219 P.3d 798, 802 (Colo. App.2009).

¶ 54 Here, in denying defendant's first challenge for cause, the trial court noted that the juror's responses were equivocal, but nonetheless "found her to be very honest and forthcoming." The trial court is in a better position to assess a juror's demeanor. *See People v. Prator,* 833 P.2d 819, 820 (Colo. App.1992) ("The factors of credibility and appearance which are determinative of bias are best observed at the trial court level."), *aff'd,* 856 P.2d 837 (Colo.1993). And, having reviewed the record, we conclude that the juror's responses indicated that she had seriously reflected on her duties as a juror and that she would try her best to perform them. *See People v. Sandoval,* 733 P.2d 319, 321 (Colo.1987) ("[a]n expression of concern by a potential juror regarding some facet of the case or about jury service" "may simply reflect an honest effort to express feelings and convictions about matters of importance in an emotionally charged setting").

¶ 55 Although the juror expressed some doubt about her ability to be fair and impartial and said that she might be biased against defendant, she also repeatedly said that she thought she could perform her duties and that she hoped she would be able to keep an open mind while hearing the evidence. *See People v. Rabes,* 258 P.3d 937, 943–44 (Colo. App.2010) (although the juror said there was a danger he would convict based on his reaction to disturbing evidence, he later "affirmatively stated that he 'would like to think' he was capable of separating his distaste from his duty as a juror"); *People v. Cevallos-Acosta,* 140 P.3d 116, 122 (Colo.App.2005) (although the juror stated he was somewhat biased toward believing the credibility of police officers, he said that he could probably be fair, that he was open to hearing all the evidence before reaching a conclusion, and that he believed in the legal system); *People v. Robinson,* 874 P.2d 453, 457 (Colo.App. 1993) (although the juror initially expressed doubt about whether she could be fair and impartial, she repeatedly said she wanted to hear all the evidence and that she wanted to be fair).

¶ 56 Further, the fact that a juror expresses doubt about her abilities to perform as a juror does not automatically disqualify her from jury service. *People v. Drake,* 748 P.2d 1237, 1243 (Colo.1988) ("A prospective juror's expression of concern or indication of the presence of some preconceived belief as to some facet of the case does not automatically mandate exclusion of such person for cause."); *People v. Ferrero,* 874 P.2d 468, 470 (Colo.App.1993) (same); *see Carrillo,* 974 P.2d at 487 (a juror's bare assertion that he would not want himself on the jury if he were defendant does not necessarily constitute a state of mind evincing bias against defendant).

¶ 57 Here, and in light of the trial court's superior position to determine the juror's credibility and demeanor, we conclude that the trial court did not abuse its discretion by denying defendant's challenge for cause. *See People v. Richardson,* 58 P.3d 1039, 1044 (Colo.App.2002) (no error in denying challenge for cause where, although the juror said that she did not know if she could put aside her past experiences, she also "consistently stated that she would do her best to fulfill her duties as a juror and at no time stated that she could not or would not act impartially or that she had a bias in favor of or against either side"); *Ferrero,* 874 P.2d at 471 (no error in denying challenge for cause where, although the juror said she had preconceived notions about the defendant's guilt, she said she would follow the court's instructions and base her decision on the evidence).

## V. Prosecutorial Misconduct

¶ 58 Defendant contends that (1) the prosecutor's voir dire statements on reasonable doubt lessened the prosecution's burden of proof; and (2) in closing argument, the prosecutor (a) misstated the law by saying that duress does not apply to the felony murder charge, and (b) effectively asked the jurors to disregard the presumption of innocence by saying that defendant had a motive to lie. We perceive no grounds for reversal.

¶ 59 Where, as here, defendant did not object to the allegedly improper statements, we review for plain error. *See Wend v. People,* 235 P.3d 1089, 1098 (Colo.

2010); *People v. Garcia,* 2012 COA 79, ¶ 8, 296 P.3d 285. Only conduct that is " 'flagrant or glaringly or tremendously improper,' and so undermine[s] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction" will constitute plain error. *Garcia,* at ¶ 8. .

### A. Voir Dire Comments

¶ 60 "A prosecutor engages in prose- cutorial misconduct during voir dire when she misstates the law or 'intentionally use[s] the voir dire to present factual matter which the prosecutor knows will not be admissible at trial or to argue the prosecution's case to the jury.' " *People v. Krueger,* 2012 COA 80, ¶ 50, 296 P.3d 294 (quoting in part *People v. Adams,* 708 P.2d 813, 815 (Colo.App.1985)).

¶ 61 During voir dire, the prosecutor engaged the jurors in a discussion about reasonable doubt. She began by explaining that reasonable doubt is not the same as beyond all doubt or beyond a shadow of a doubt. She also read the definition for rea- sonable doubt that the court had given to the jurors. The prosecutor then used the analo- gy of buying a house to explain the concept of reasonable doubt to the potential jurors. During this discussion, she said,

> You're never going to reach a conclusion that you absolutely 100 percent made the right decision. There is always going to be questions or a doubt as to whether or not such a big purchase was the best thing for you, agreed? ... You see the compari- son I'm making between what is a reason- able doubt? You all obviously got over any reasonable doubts that you had about buying the house otherwise you wouldn't have bought it, agreed?

¶ 62 On appeal, defendant argues that these statements implied that the jurors could render a guilty verdict despite the rea- sonable doubts they might have. Although the prosecutor's statements about reasonable doubt may not have explained the law accu- rately, they do not warrant reversal. *See Cevallos–Acosta,* 140 P.3d at 123–24. The statements were brief, occurred early in the trial, and were not repeated. *See People v. Estes,* 2012 COA 41, ¶ 41, 296 P.3d 189; *Cev- allos–Acosta,* 140 P.3d at 124. Also, both the

court and the prosecutor read the proper definition of reasonable doubt to the potential jurors during voir dire. At the end of the trial, the jurors again received oral and writ- ten instructions properly defining reasonable doubt, and we presume the jurors under- stood and followed these instructions. *See Cevallos–Acosta,* 140 P.3d at 124; *see also People v. Villa,* 240 P.3d 343, 358–59 (Colo. App.2009).

### B. Closing Argument Comments

#### 1. Misstated the Law

¶ 63 We reject defendant's contention that the prosecutor misstated the law by instruct- ing the jury that duress is not a defense to felony murder. As we explained in section III of this opinion, that statement was cor- rect.

#### 2. Presumption of Innocence

¶ 64 We also reject defendant's con- tention that the prosecutor essentially asked the jurors to disregard the presumption of innocence. In discussing defendant's theory of the case—that he was under duress when he committed the offenses—the prosecutor said:

> [T]here is no evidence in this case, inde- pendent evidence of duress other than the defendant's statements. None. [Defen- dant's wife] doesn't know anything ... about the defendant getting beat up at [a GKI member's] house. She doesn't know anything about the defendant having a drug debt. There is no independent evi- dence except what the defendant said on the witness stand. And what are you al- lowed to do? What does the law allow ... you to do with regard to statements of any witnesses? You're going to see an instruc- tion in your instruction packet that talks about credibility and what you should take into account to determine the credibility of a witness. And when the defendant takes the stand and testifies in this case, he puts his credibility at issue just like any other witness, and you will look at that instruc- tion and it tells you that you can look at a person's motive and reason for testifying the way that he does. *Who has a greater*

*motive to make up excuse after excuse after excuse about his own behavior? ... He has done nothing in this case but try and make excuses for himself. And you don't have to believe a word he says, and you can guess what his motivation is for telling you the things that he has told you.*

(Allegedly improper comments in italics.)

¶ 65 When read in context, these statements are proper comment on the instructions and the jury's duty to assess the witnesses' credibility. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1051–52 (Colo.2005) ("[C]ounsel may properly argue from reasonable inferences anchored in the facts in evidence about the truthfulness of a witness' testimony."); *People v. Gibbons*, —— P.3d ——, —— (Colo.App.2011) (same); *cf. People v. Brown*, 313 P.3d 608, 618 (Colo.App. 2011) (although the prosecutor's rhetorical questions improperly emphasized the defendant's lack of credibility, they did not warrant reversal). The statements also are proper commentary on the lack of evidence in support of defendant's theory of the case. *See Estes*, ¶ 28; *People v. Gibson*, 203 P.3d 571, 577 (Colo.App.2008).

¶ 66 Further, the jury clearly believed defendant's defense, as evidenced by the special interrogatory in which the jury acquitted him of attempted aggravated robbery solely based on his duress defense. Thus, even if improper, the statements would not warrant reversal because they did not undermine the fundamental fairness of the trial. *See Garcia*, ¶ 21.

## VI. Correction of the Mittimus

¶ 67 The parties agree that the mittimus must be corrected because it erroneously reflects that defendant pled guilty to the two crime of violence counts, the second degree murder count, and the felony murder count. We agree.

¶ 68 First, as reflected in the record, defendant did not plead guilty to any of the charges against him. All of his convictions were based on jury verdicts.

¶ 69 Second, the jury was instructed to address the two crime of violence counts only if it found defendant guilty of attempted aggravated robbery. Because the jury found defendant not guilty of that offense, it made no findings as to the crime of violence counts. Thus, the mittimus erroneously contains convictions for those two counts.

¶ 70 Accordingly, the judgment of conviction is affirmed, and the case is remanded to the trial court to correct the mittimus to reflect (1) jury convictions rather than guilty pleas, and (2) convictions only for second degree murder and felony murder.

Judge NEY * and Judge KAPELKE * concur.